UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRAVELHOST, INC., a corporation,    )
                                    )
            Plaintiff,              )
                                    )         CIVIL ACTION NO.
VS.                                 )
                                    )         3:11-CV-0456-G
TRENT MODGLIN,                      )
                                    )
            Defendant.              )

MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff's motion for reconsideration (docket entry 78). The plaintiff seeks reconsideration of the court's Memorandum Opinion and Order of February 29, 2012 (docket entry 77), in which the court denied the plaintiff's motion for preliminary injunction (docket entry 26). For the reasons set forth below, the plaintiff's motion for reconsideration is granted, and upon reconsideration, the plaintiff's motion for preliminary injunction is granted.

I. BACKGROUND

This is a non-compete dispute. The plaintiff, Travelhost Inc. ("Travelhost"), produces magazines, publications, and online products and services designed to help travelers. First Amended Complaint ("Complaint") ¶ 7 (docket entry 5). The

defendant is Trent Modglin ("Modglin"),[1] who entered into a contract with Travelhost regarding a magazine for travelers in downtown Chicago, Illinois. *Id*.

The court has already set forth the general background of this case in a previous order. *See* Memorandum Opinion and Order of February 27, 2012 ("February 27 Order") at 2-3 (docket entry 73). The following facts are those that are especially relevant to the plaintiff's motions for reconsideration and preliminary injunction.

In November of 2007, RCP entered into a contract with Travelhost. Brief in Support of Motion for Preliminary Injunction ("Brief") at 1 (docket entry 27). As a part of this agreement, Modglin signed an addendum to the contract, in which he agreed to be personally bound by the RCP/Travelhost contract's non-compete clause. *Id*. at 2. This non-compete clause states:

> [RCP] agrees that it will not, either directly or indirectly, engage or participate in a similar business or one competitive with [Travelhost] . . . within its Designated Area during the term of this Agreement or within two (2) years after termination of this Agreement.

Appendix in Support of Plaintiff's Motion for Preliminary Injunction ("Appendix") at 8 (docket entry 28).

---

[1] The plaintiff also brought suit against The Real Chicago Publishing LLC ("RCP"). Complaint ¶ 2. While Modglin was the sole shareholder of RCP, RCP was the party that actually entered into the contract with Travelhost. Complaint ¶¶ 2, 7. This court entered an order granting a permanent injunction by default against RCP on October 11, 2011 (docket entry 25). The court also entered a default judgment on monetary damages against RCP on February 28, 2012 (docket entry 76).

On February 22, 2010, Travelhost sent Modglin written notice of termination of the agreement. Brief at 3. This was due in part to Modglin's failure to pay the outstanding balance he owed for the September-November 2009 issue of Travelhost, and in part to Modglin's failure to distribute the January quarterly issue of the local edition of the Travelhost magazine. Appendix at 4.

Travelhost contends that sometime shortly after the distribution of the September-November 2009 issue of the Travelhost local edition, Modglin began to distribute and sell advertising into a new publication called "The REAL Chicago" within the designated area, in violation of the non-compete clause. Brief at 4. Modglin is the publisher of the competitive publication, and uses many of the same individuals for distribution, photography, graphic design, and advertising sales. *Id*. The competitive publication also targets the same markets, readers, and distribution channels as Travelhost Magazine, and the marketing media for the competitive publication contains much of the same information included in the Travelhost media kits for the market. *Id*. at 5.

Moreover, many of the advertisers in the competitive publication are identical, and the competitive publication has run the exact same advertisements as Travelhost in a number of instances. *Id*. A spreadsheet compiled by Patricia Nuss, Vice President of Communications for Travelhost, comparing the Winter 2010 edition of the competitive publication with the August 2009 edition of Travelhost, shows that

of 33 ads in Travelhost and 25 ads in the competitive publication, 13 ads were the same or similar. Appendix at 135. As such, Travelhost argues, the competitive publication is in direct competition with Travelhost Magazine within the same market area. Brief at 5.

On January 5, 2011, Travelhost sent Modglin a cease and desist letter, demanding that he stop participating in the competitor publication. *Id*. According to Travelhost, it sent this letter "[a]s soon as possible upon learning and obtaining verification of the existence of the [c]ompetitive [p]ublication and obtaining a copy of it." *Id*. Modglin did not respond to this letter, and did not stop working with The REAL Chicago publication. *Id*.

On March 4, 2011, Travelhost filed this suit against Modglin. Plaintiff's Brief in Support of Motion for Reconsideration ("Reconsideration Brief") ¶ 3 (docket entry 78-1). Due to Modglin's refusal to accept service, Travelhost was forced to hire process servers to serve Modglin with the complaint. *Id*. Modglin continued to refuse service from the process server, who eventually left the summons and complaint at his residence and mailed a copy to his residence. *Id*. On August 1, 2011, Modglin e-mailed plaintiff's counsel, demonstrating that he was aware of this case. *Id*. On August 5, 2011, Travelhost sought entry of default against Modglin for his failure to file an answer. *Id*. After receiving two extensions, Modglin timely filed his answer on September 7, 2011 (docket entry 19).

Travelhost filed a motion for preliminary injunction on October 14, 2011. Plaintiff's Motion for Preliminary Injunction ("Motion for Preliminary Injunction") (docket entry 26). This court denied plaintiff's motion on February 29, 2012, because the term of the non-compete clause had expired on February 22, 2012, *i.e.*, two years after the termination of the agreement. Memorandum Opinion and Order of February 29, 2012 ("February 29 Order") at 2-3 (docket entry 77).

Over five months after the original discovery requests, following plaintiff's motion to compel and a motion for sanctions, Modglin produced several documents to Travelhost on February 28, 2012. Reconsideration Brief ¶ 11. The documents reflect that Modglin registered the domain name "www.therealchicagoonline.com" on January 7, 2010, printed media kits and business cards for the competitive publication in January of 2010, and sold advertising for the first issue at least as early as February 23, 2010. *Id*. Furthermore, the documents show that Modglin, as publisher, has been actively promoting and selling advertising for the competitive publication without interruption ever since termination of the agreement. *Id*.

In light of this new evidence, Travelhost filed this motion for reconsideration on March 7, 2012. Plaintiff's Motion for Reconsideration ("Motion for Reconsideration") (docket entry 78). In this motion, the plaintiff seeks reconsideration of the order denying the plaintiff's motion for preliminary injunction, and asks the court to equitably extend the term of the two-year non-compete

agreement. Reconsideration Brief at ¶ 1. Modglin has not filed a response to Travelhost's motion for reconsideration.

## II. ANALYSIS

### A. Motion for Reconsideration

The plaintiff has filed a motion for reconsideration of the court's order denying its motion for preliminary injunction. The Federal Rules "do not recognize a 'motion for reconsideration'" in those words. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Instead, courts in the Fifth Circuit will treat a so-called motion for reconsideration either as a motion to alter or amend a judgment under Rule 59(e), or as a motion for relief from judgment under Rule 60(b). *Id.* Under Rule 54(a), a judgment is defined to include "any order from which an appeal lies." "Because 28 U.S.C. § 1292(a)(1) establishes appellate jurisdiction over an appeal from a preliminary injunction, a preliminary injunction order is a 'judgment.'" *Credit Suisse First Boston Corporation v. Grunwald*, 400 F.3d 1119, 1124 n.6 (9th Cir. 2005).

When deciding whether such a motion falls under Rule 59(e) or Rule 60(b), the court will look to when the motion was served. *Lavespere*, 910 F.2d at 173. "If the motion is served within [28][2] days of the rendition of judgment, the motion falls

---

[2] In 2009, the time period listed in Rule 59(e) was extended from 10 days to 28 days. *See* Advisory Committee Notes, 2009 Amendments, FED. R. CIV. P. 59(e).

under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id*. In this case, because the plaintiff's motion for reconsideration was filed within 28 days of the order denying the plaintiff's motion for a preliminary injunction, it will be considered a motion to alter or amend a judgment under Rule 59(e).

In order to succeed, "[a] motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotation marks omitted). Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law. *Brockie v. Ameripath, Inc.*, No. 3:06-CV-0185-G, 2007 WL 2120041, at *1 (N.D. Tex. July 23, 2007) (Fish, C.J.), *aff'd*, 273 F. App'x 375 (5th Cir. 2008).

In this case, the plaintiff has presented new evidence indicating that the court should revisit its decision denying the motion for preliminary injunction. The plaintiff's motion for reconsideration includes persuasive evidence that the defendant has been continuously involved with a publication that is in direct competition with the plaintiff's business. *See* Reconsideration Brief at 7-8. In particular, the plaintiff has submitted copies of pages from The REAL Chicago, which were published with dates from Winter 2010 to Winter 2012, and which list Modglin as the publisher of

the publication. *Id.*; *see also* Appendix in Support of Plaintiff's Motion for Reconsideration ("Reconsideration Appendix") at 7-20 (docket entry 78-2).

### B. Motion for Preliminary Injunction

In its original motion, the plaintiff sought a preliminary injunction against the defendant in accordance with the terms of the non-compete agreement. To obtain a preliminary injunction, a plaintiff must demonstrate "(1) a substantial likelihood that [it] will prevail on the merits, (2) a substantial threat that [it] will suffer irreparable injury if the injunction is not granted, (3) [its] substantial injury outweighs the threatened harm to the party whom [it] seek[s] to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (quoting *Bluefield Water Association, Inc. v. City of Starkville*, 577 F.3d 250, 252-53 (5th Cir. 2009)). The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Mississippi Power & Light Company v. United Gas Pipe Line Company*, 760 F.2d 618, 621 (5th Cir. 1985). Such relief is an extraordinary remedy which should only be granted if the movant has clearly carried its burden of persuasion on each of the four factors. *Id.*; *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (citations omitted).

In this case, the plaintiff has carried the burden of persuasion on each of these four requirements. As a result, the plaintiff's motion for a preliminary injunction is granted.

First, the plaintiff must show that there is a substantial likelihood that it will ultimately prevail on the merits of the case. When determining the likelihood of success on the merits, the court looks to the substantive law. See *Roho, Incorporated v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). To obtain an injunction, the movant's likelihood of success must be more than negligible, *Compact Van Equipment Company, Inc. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978), and the preliminary injunction should not be granted unless the question presented by the applicant is free from doubt. *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 97 (5th Cir.), *cert. denied*, 375 U.S. 829 (1963).

As noted above, the plaintiff seeks injunctive relief to enforce a covenant not to compete. Under Texas law, a covenant not to compete is enforceable if: (1) "it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made," and (2) it "contains limitations as to time, geographical area, and scope of activity . . . that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE § 15.50.

In this case, it is likely that the plaintiff will succeed on the merits of its case against the defendant. This is because the non-compete agreement that Modglin entered into with Travelhost appears to be enforceable. First, the non-compete agreement was ancillary to the otherwise enforceable distribution and associate publisher agreement between the parties. This is because the principal goal of the contract was the publication and distribution of a travel magazine, and not limiting Modglin's ability to compete with Travelhost. Second, the agreement was reasonably limited in time, geographical area, and scope of activity. The term of the non-compete agreement is only two years, it only applies within the downtown Chicago area, and it only applied to participation in business that deals with travel publications.

Second, the plaintiff must show that there is a substantial threat that it will suffer irreparable injury if the injunction is not granted. An irreparable injury is one that cannot be remedied by an award of economic damages. *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Butnaru v. Ford Motor Company*, 84 S.W.3d 198, 204 (Tex. 2002). For example, dollar values cannot easily be assigned to a company's loss of clientele, goodwill, marketing techniques, or office stability. *Martin v. Linen Systems for Hospitals, Inc.*, 671 S.W.2d 706, 710 (Tex. App.--Houston [1st Dist.] 1984, no writ). To secure an injunction, a party must plead and prove a probable irreparable injury if the court denies temporary equitable relief.

*Hilb, Rogal & Hamilton Company of Texas v. Wurzman*, 861 S.W.2d 30, 32 (Tex. App.--Dallas 1993, no writ).

In this case, the plaintiff has shown that a failure to enjoin the defendant's competitive conduct would result in irreparable injury.  The plaintiff's motions for preliminary injunction and reconsideration show that the defendant continues to act as a publisher for a publication that is in direct competition with the plaintiff's business.  This competitor publication uses many of the same individuals for distribution, photography, graphic design, and advertising sales, thereby leading to Travelhost's loss of marketing techniques as well as the loss of uniqueness of its publication.  These actions will likely result in the loss of clientele and business good will for the plaintiff, which constitute an irreparable injury.

Third, the plaintiff must show that the injury it will suffer if the court denies injunctive relief is greater than the injury the defendant will suffer if the relief is granted.  In this case, the threatened injury to the plaintiff outweighs the potential harm done to the defendant's interests.  By allowing the defendant to continue to compete with the plaintiff in violation of the non-compete agreement, the plaintiff's business will suffer a loss of good will and client connections.  In contrast, the defendant will only be held to his contractual obligation to not compete with the plaintiff's business in the downtown Chicago area for two years.

Finally, the plaintiff must show that granting the temporary restraining order will not disserve the public interest. Texas law favors the enforceability of covenants not to compete and the enforceability of valid contracts. TEX. BUS. & COM. CODE § 15.50; *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 771 (Tex. 2011); *Courtroom Sciences, Inc. v. Andrews*, No. 3:09-CV-0251-O, 2009 WL 1313274, at *15-16 (N.D. Tex. May 11, 2009) (O'Connor, J.). Thus, issuance of a preliminary injunction will not disserve the public interest.

C. Equitable Extension of Non-Compete Agreement

Because the term of the original non-compete expired on February 22, 2012, Travelhost is seeking an equitable extension of the non-compete term. Plaintiff's Motion for Reconsideration ("Motion for Reconsideration") at 2 (docket entry 78). In particular, the plaintiff seeks an order "granting the preliminary injunction for a two-year term beginning the date of the order granting injunctive relief." *Id*.

A district court may exercise its equitable power to craft an injunction that extends beyond the expiration of the covenant not to compete. *Travelhost, Inc. v. Brady*, No. 3:11-CV-0454-M(BK), 2012 WL 555191, at *6 (N.D. Tex. Feb. 1, 2012) (Toliver, M.J.) (citing *Guy Carpenter & Co., Inc., v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003)). Under Texas law, covenants not to compete can be equitably extended if the violations of the covenant were "continuous and persistent." *Id*. (quoting *Farmer v. Holley*, 237 S.W.3d 758, 761 (Tex. App.--Waco 2007, review denied)).

In this case, the court will exercise its equitable power to extend the term of the non-compete agreement. This is because the plaintiff's motions for preliminary injunction and reconsideration show that Modglin has been continuously and persistently involved in the publication of the competitor publication. According to the evidence submitted by Travelhost, Modglin has directly competed against Travelhost at least since the fall of 2009, while he was still under contract with Travelhost. Moreover, Modglin's competitor publication was published as recently as the winter of 2012. As a result, it is only fair that this court use its equitable power to extend the term of the non-compete agreement for an additional two years.

### III. CONCLUSION

For the reasons set forth below, the plaintiff's motion for reconsideration is **GRANTED**, and as a result, the plaintiff's motion for preliminary injunction is **GRANTED**. Counsel for Travelhost shall submit, within ten days of this date, a proposed decree of preliminary injunction consistent with this memorandum opinion and order, providing for security, as required by F.R. Civ. P. 65(c), in the amount of $1,000.00.

**SO ORDERED**.

June 6, 2012.

*A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**